Good morning. I'm Kevin Sadler, and I'm here this morning with my colleague Stephanie Kenyart. We represent Ralph Janvey, who is also here. He's the court-appointed receiver charged with cleaning up the very large Stanford Ponzi scheme. We're here on a very important case for this court, and we are here involving a case that does not involve an honest debtor who just needed a fresh start because he got in over his head in the ordinary course of running his life. And that's why we submit that allowing Mr. Romero to go to bankruptcy court to target his single largest creditor and debtor, the federal court judgment that we obtained after full trial and appeal, to target that, to vaporize it, and to use bankruptcy court in forum shopping. And there is no doubt under this record that is exactly what happened, forum shopping, to gain an advantage in other litigation and really just to game the system. That is, there are a lot of people out there that need the protection of bankruptcy. Isn't that precisely contrary to the factual finding of the bankruptcy court, that there was in fact good faith here? I mean, that's just such an intensely factual question. I don't know. I will absolutely address that directly because it's the bankruptcy court's decision. First of all, the bankruptcy court said, I agree that bad faith can be caused, cause is the standard under the statute, and I'm going to apply the totality of the circumstances test. And you go to his... What's wrong with that? What's wrong with that? Nothing. But here's the misstep. Here's the fatal misstep. The very first factual finding that the bankruptcy court makes is critical. The primary motivation for Mr. Romero to go to bankruptcy court was to evade this judgment. That's a factual finding we agree with, and that is absolutely clear under this record. You look at this record. When did Mr. Romero file bankruptcy has nothing to do with any other circumstance that the bankruptcy judge focused on other than he lost for about the 12th time in front of the receivership court, and within 24 hours of the receivership court allowing us to register our judgment in California to try to collect it, because by that time we'd had the jury trial. It had gone to the Fifth Circuit. Mr. Romero had filed all sorts of motions to try to undo it. To go to California to register our judgment. When we got that order from the receivership court over Mr. Romero's objection, within 24 hours he files bankruptcy. Within 24 hours he files bankruptcy. Don't people file bankruptcy petitions to relieve pressure from judgment creditors? All the time you're a judgment creditor, and people do file bankruptcy petitions because they're under pressure. Absolutely, Your Honor, but the difference is bankruptcy is a court of equity, and part of the cause standard clearly is, is this an appropriate use? Well, fine. If it's a court of equity, then we have a 12-factor test in the district. What was it, the McDowell test? Is that what it is? That's the one he picked. That's right, but you just said it's a court of equity, and there was a 12-factor test, including some equitable considerations. Number one, he was candid with the court. Number two, he had a situation where his wife was ill, and it required care needs on his part. He had medical expenses for her, for her medical condition. Why isn't that an equitable consideration? Because it is not a relevant factor, and let me tell you why. We have all the understanding and sympathy in the world for Mr. Romero's wife's condition, or any debtor who would go to court, bankruptcy court, and say, look, I can pay money to this creditor, or I can pay for these medical expenses, but I can't do both, and I need help from the bankruptcy court. The problem is that is not this case, for three reasons. Ms. Romero was not part of this bankruptcy case. Her assets and liabilities were not part of this case. What we do know is that she receives $12,000 a month to take care of her situation. So Ms. Romero's condition is not a relevant factor, and as I just pointed out, he filed bankruptcy less than 24 hours after he lost a key decision in court. His wife had already been ill for years. There is no evidence in the record that any medical bills were unpaid or under threat of being unpaid, and this gets to one of the critical factors that the bankruptcy court just blew past, which is we are his single largest creditor. We're basically his only creditor. Why do you think the trustee was agnostic in this whole fight? Because it's a two-party fight. We have a multi-millionaire who doesn't want to pay a judgment. But there's no single creditor exception to discharge and ability to get a discharge in bankruptcy. But it is, Your Honor, a factor under the cause standard. I agree, but the word cause is non-exclusive, and it is, it allows, when I see some word like cause, I suggest you can throw in the kitchen sink, and not that much, but you can put in a lot of factors, and you've just explained it's an equitable consideration, and part of the equitable consideration is he might have been able to pay you, but he could only pay you out of statutorily exempt assets. Is that right? Let me address that, because that is another point that the bankruptcy court went off on the wrong track. There has been no adjudication whatsoever that these assets are exempt. And I'll tell you, this whole- No, the bankruptcy court said they were exempt. We didn't challenge in the bankruptcy court the whole issue of exemptions. Our objection was we shouldn't be in bankruptcy court to begin with. Well, why wouldn't you challenge the fact that they, that, you know, you can, why wouldn't you at least make the case, we can pay you in full through the use of, utilization of non-exempt assets? Because our position was, Your Honor, the case never belonged in bankruptcy court to begin with, because it was bad faith. And let me call your attention to something important in the record on this issue of exempt assets. It, again, and it's the issue of forum shopping, which the bankruptcy court never addressed in our litigation in the receivership. We have hundreds of defendants, dozens and dozens of lawsuits. Twice we have had other defendants raise issues of, You can't get to my assets on fraudulent transfer claims because we have them in exempt places like IRAs. Twice we have litigated that in front of the district court in Dallas and won. Twice it's been affirmed at the Fifth Circuit. Why do you think Mr. Romero wanted to go to a friendlier forum to litigate with us? Again, this is such an important case because the facts that have been brought to you are about a debtor who is a multimillionaire today. If he paid our judgment in full, he'd be a multimillionaire. So we're not talking about hardship, let alone undue hardship. It seems to me that your problem is that the bankruptcy court agreed with you on the big legal question about whether bad faith is cause for dismissal, and then also was prepared to assume with you that a debtor's desire to protect sizable exempt assets could be sufficient for finding bad faith, and still found that there's no bad faith here. So it's fair to say that was an abuse of discretion. Let me talk to you about six critical, specific errors the bankruptcy court made that are germane to the questions that have already been asked. The first one you mentioned was the motivation one. Again, the bankruptcy court sort of agreed with you, the primary motivation was addressing this one judgment, but then goes on to say the point is more nuanced than that, and talks about efforts to settle, and the strategic importance that the receiver found in this case, and I just think it is just very hard for me to sit here and try to say, well, that's clearly erroneous. May I respond? Bankruptcy court's findings have to be based on evidence. We can all agree on that. And I can point to you now critically where the bankruptcy court made findings in evidence. You mentioned one. One of the six I was going to talk about. This whole discussion about who was a good person or who was a bad person in settlement. The bankruptcy court found that Mr. Romero had made a good faith effort to settle. Where is the evidence of the actual dollar amount Mr. Romero ever offered to settle? It's not in your record. Do you think as a matter of law there can be no good faith effort to settle without putting a dollar amount on the table? Is that what you want us to hold? I want you to hold, Your Honor, that how can you conclude anyone acts in good faith with regard to making a settlement offer if they don't put into the record what they offered? As far as who reaches settlement. You're saying that whoever wants to reach a settlement has to put down the first number. The first thing I'm As a matter of law. Yes, Your Honor. Okay. Absolutely. Let me start. Because otherwise you're just speculating about whether No, no, no. Yes, Your Honor. Let me be honest. That's a good point. I see your question. How could, in your view, maybe your view is that it couldn't. Is there any place that someone proffered that he tried to settle it? Because we don't have to sit by and allow the court, the bankruptcy court, to just say something out of whole cloth and doesn't exist. That's true. So are you saying that there's no proffer, no written statement, none of that that's in the record as to his actions as to trying to settle? The only thing you have, Your Honor, is his statement at the hearing, which says, I tried to settle, but the receiver wouldn't settle with me. But he was under oath. Yes, absolutely. Was he subject to cross-examination? He absolutely was subject to cross-examination. But I don't believe there is evidence. And let me say that who was a good guy in settlement or not is not a relevant factor to begin with. Let me point out to you, I think, some more important things that the bankruptcy court got wrong. And this is, I understand, an abusive discretion appeal. The bankruptcy court was very critical. I think we all understood that from his opinion. Very critical of the receiver for what he perceived to be, and these aren't his words, but I think it's a fair summary, our heavy-handed collection efforts, trying to go after collecting our judgment. First of all, I would say, our conduct is not what was an issue. But that's clearly what the bankruptcy court focused on. And he said some things that are just flat-out wrong. First, he said there was no indication that Mr. Romero had reduced his liabilities to a single creditor. And we know that is just flat wrong. He went into bankruptcy with only six debts. Two of them were his wife's credit cards, and they got rid of those. One was his own credit card, which he paid off. One was a law firm that didn't file a proof of claim. And so now, as we sit here, he's only got two creditors. We are 95 percent of it. His law firm that he owes some money to. The bankruptcy court, one of the factors you're supposed to look at under the totality of circumstances test, is the debtor maneuvering to isolate and target a single creditor. That's one of the factors. The bankruptcy court says there's no indication that happened here. The bankruptcy court was dead wrong. Very erroneous. Absolutely. Absolutely. The bankruptcy court was critical of us and said in his opinion on page four, well, you guys put out Mr. Romero because you went and filed a garnishment action in California. That never happened. There is nothing about that in the record because it never happened. I think the bankruptcy court was confused. I think he probably was thinking about when we went to the trial court to get permission to register our judgment in California. But he criticizes us and excuses Mr. Romero on the basis of something that we never did. And again, I can't overemphasize the fact that it shouldn't be the receiver's conduct in issue. Yes, sir? Didn't he make a, didn't the bankruptcy judge make a finding that the only way he could afford to repay the debt was to use statutorily exempt assets? And that gets to a critical issue. We cited to you two cases, the Cornfield case and the Campbell case. Both, yes, sir? It's not a question of those cases. It's a question of is that correct or is that not correct? It's a factual matter. And Your Honor, it is not correct for this reason. Mr. Romero has been using his exempt assets for all sorts of things, including litigating against us. But that doesn't answer the question of whether for purposes of a bankruptcy discharge and a bankruptcy plan, those are statutorily exempt assets. Your Honor, because that's a different question. I agree. It's a different question. The question we say is the proper question is, when you come into bankruptcy court and someone just makes a claim, it's never been adjudicated, oh, I have exempt assets, does the bankruptcy court pretend that those monies don't exist? And there is no persuasive case law that says that's the truth. He has got millions of dollars in money. He just chooses not to spend it. I might say one thing. You said the bankruptcy court did this and that. But this is an adversary system. And if the bankruptcy court is wrong in some of its assumptions or factual assumptions, you have an obligation to bring those out. And we did. We absolutely did. And he did consider it. He did hear it. But he made the wrong legal judgment. And again, there is no immunity, there is no deference to a wrong legal judgment. The bankruptcy court took the view that these millions of dollars in exempt assets are just kind of off the table. You just sort of pretend they're not there. Look, here's the deal. To me, this was the most important statement in the bankruptcy court's opinion. This is a guy whose reputation has been tarred a little bit because of his government service. The bankruptcy court looks at it and he says he's facing, quote, an inability to earn a living because it's going to be difficult for him to get another job, his wife's illness and care needs, the pending termination of two disability policies, and aggressive and costly litigation tactics by the receiver. Now, that's taking into account four factors, equitable, I think, in nature, but if you don't have an ability to earn a living because of reputational issues, one, rightly or wrongly, and you've got an ill wife and your disability policies are being terminated, and you've got a creditor who's driving up costs on you with aggressive and costly litigation tactics, you've got statutorily exempt access that you don't have to use to repay it, and you've made a settlement offer to try to resolve it peacefully, and whether the exact amount has been entered or not, there was a settlement offer made, and apparently the bankruptcy court thought you gave it the back of your hand. Now that seems to me, you know, just a run-of-the-mill factual determination that the bankruptcy court made, and it had the record and facts before it in a way that we don't. Your Honor, and let me, if I can, respond to that, because this is so important. What the bankruptcy court focused on when it was critical, and you mentioned it, critical of our collection efforts, but here is where this case went off the rails. Bankruptcy court is not the place to relitigate the other litigation, and let me just directly answer that question about the cost of litigation. The trial court that presided over the fraudulent transfer trial that Mr. Romero lost, he failed to prove his good faith defense, awarded us attorney's fees, and the trial court said, one of the reasons the attorney's fees are so high and I'm going to award them, this is because Mr. Romero has driven up the cost of litigation. Mr. Romero is the one that has been so litigious. We now fast forward to the bankruptcy court, and now the bankruptcy court is sitting like some sort of super appellate court that says, you know, I basically don't agree with that. I think it's all the receiver's fault, and I'm going to give this guy a break. That is an abuse of discretion. I would like to reserve, if I may, the remainder of my time for rebuttal. With the court's permission. All right, thank you. Mr. Roblack. Good morning, Your Honors. Kevin Roblack from Whiteford Taylor & Pressen on behalf of Ambassador Peter Romero, who's in the courtroom today. May it please the court. Your Honors, at its core, appellant simply just disagrees with the factor analysis that Judge Cagliotta conducted, as well as disagrees with Congress and their statutory exemption structure. But appellant's mere disagreement with Judge Cagliotta's analysis is not an abuse of discretion, which is the standard here today. As this court has explained, the abuse of discretion standard requires a significant measure of appellate deference, so that reversal does not result merely because this court would have come to a different conclusion. Let me understand all that, but let me ask you this. Yes, Your Honor. This may not be your case, but suppose you have a debtor who is able to repay all of his creditors through non-exempt assets, okay, just hypothetically. Is he barred as a matter of law from seeking a discharge in bankruptcy? He's absolutely not, Your Honor, because it's actually... If he can pay every debt... Even if he can pay... Even if he can pay through non-exempt assets, is he barred as a matter of law from seeking a discharge? He is not, Your Honor. Tell me why not. The answer to that is very easy, and that lies in the legislative history of Section 707A, where the legislature specifically said, quote, Section 707A does not contemplate, however, that the ability of the debtor to repay his debts in whole or in part constitutes adequate cause for dismissal. To permit dismissal on that ground would be to enact a non-uniform mandatory Chapter 13 in lieu of the remedy of bankruptcy. So the answer is clearly no... That's the history. What about the text of the statute? Well, the text of the... Hang on to the word cause, right? The text of the statute calls for cause. Understand. But just as a... Explain it to me in human terms, why if someone's able to repay all their creditors through non-exempt assets, they should still receive a discharge in bankruptcy. Just explain to me in human terms why that doesn't establish something close to an absolute rule. Well, putting aside that Congress says it doesn't... Well, I... No, Congress... You've got a snippet of legislative history, which ain't that hard to find sometimes. But the statute is a little bit open-ended and that sort of works in your favor, but not completely. Well, sort of, but just tell me in human terms why we would want to give debtors discharges in bankruptcy if they can pay every one of their creditors off in full with non-exempt assets. Just tell me. Well, it goes to the bad faith issue that we have before the court today. And looking back at this court's decision in the Carolyn case back in the 1980s, what this court held in the context of a Chapter 11 was the motivating factors of a debtor, i.e., the subject of bad faith, is not the issue that decides whether or not the dismissal occurs. There is a requirement in addition to the subject of bad faith that there can be no of Chapter 7. In that case, it was Chapter 11. Here we have a situation where Ambassador Romero is doing exactly what is allowed for and called for by Congress under the Bankruptcy Code. Your Honor pointed out that he has... How do you mean? I'm sorry? How do you mean he's doing exactly what is called for? Judge Catliota found that he complied with all of the trustees' requests, all of the debtors' requests. He was timely in all of his findings. His schedules were completely accurate. He gave consents to the other side for extensions on their analysis of the complaint against non-dischargeability. All that's to the good, and I don't mean to discount it, but tell me the benefit. I want it not in terms of precedent or anything, but just tell me the human benefit that would a discharge in bankruptcy when somebody is able to repay every debt with non-exempt assets. I want to know. Okay. Well, the Congress set up this statutory scheme so that one doesn't have to exhaust all of their assets. They... Congress allowed a debtor to have a fresh start. They don't have to deplete everything that they own in order... Okay. Now you're getting down to it. All right. That's a much more satisfying answer, and that is, if the philosophy of the code is a fresh start, you don't necessarily want to drive someone to the point of pennilessness before they are able to achieve bankruptcy. You can be in a hard way. That's correct. You can be able to pay your debts and still be in a hard way because, as we all know, living in the modern world requires a lot more than just being able to pay the bills. That's correct. You've got... There are a million other necessary expenses, so that's the human side of it I wanted you to get to. Thank you. Yes? It seems as though you also have the rest of the text, right? Section B of 707 goes through these elaborate calculations based on exactly that, like how much money is enough you want to leave people with something. It's this incredibly complicated formula. It applies only to consumer debt, but the whole thing would be a nullity if you could then turn around, take a consumer, put them under A, and say, no, I'll just do a back of the envelope thing. That's exactly right, Your Honor. Right? Yes, Your Honor. Yeah. The second thing I wanted to point out about this ability to pay analysis is something that Judge Harris picked up on earlier, and that is that Judge Cagliotta did in fact analyze and consider these exempt assets in his ruling because he said that even assuming that these exempt assets are out there, he still didn't find bad faith. And so the court didn't err in ignoring the exempt assets, as the appellant suggested in his brief. He said that even assuming the, what did you say? He said, even, quote, assuming a debtor's desire to protect sizable exempt assets could ever be sufficient for finding bad faith, the court concludes the debtor is not acting in bad faith here, end quote. That's a conclusion. But you agree, clearly he was targeting one creditor, right? No, I don't. As a matter of fact, the two things on that. First, the factor is not targeting one of the creditors. Is it true that he resolved some of the other creditors? Is that true? It is true that his wife paid the credit card debt because they were- Oh, his wife paid? His wife paid it. Who was not a debtor here? Who was not a debtor here. Oh, okay. He did- Is that a part of it? Should that be considered? No, I don't think it should be considered. Well, how can you have it both ways? You're going to consider what potentially are health concerns, but not consider that non-party debtor paying assets from the family to resolve credit. Was it part of his debt? He's an authorized user on that credit card, so both- Yes, is it? Yes. So she was using her funds to pay off his creditors? That's correct. So that should be considered? Well, technically it was her creditor. She was the cardholder. I know technically, but technically, if you want to be technical, then her debts potentially shouldn't be considered at all, should they? Well- Like her health. No, her health. So on Schedule J, which is the schedule that lists the household income and expenses, Congress first set forth the schedule to include the household expenses because they recognize that a marital couple's assets and expenses can't necessarily be parsed in determining how much that couple can live on going forward. There's a specific separate schedule for a spouse who is separated and living in a different household. So Congress treats them as combined for purposes of the bankruptcy process. Well, did he spend $850,000 fighting that debt? My understanding is he did, but a majority of that was from his exempt assets that he chose to use to overturn and defend what were called aggressive litigation tactics and quote, procedural gymnastics. And what's the total debt at that time? What was the debt he was fighting? I don't believe that there was a judgment at that time. What was the debt he was trying to fight? It was about $1.2 or $3 million, I think, is the total debt right now. $850,000 to fight a $1.2 million potential debt? That's what happens when the other side won't settle. With so-called exempt funds? So did the court weigh that at all? It did. In this record? And what was the comments about that in the record? In the record about? It was weighed. How was it weighed? Well, it was weighed because the court determined that the appellant wouldn't settle. And so there were mediations in the lower court that's in the record. There was a discussion about those mediations. There was a liquidation analysis that we provided to. . . What about the fact that some of the findings in that case, is that true that a lot of the legal expenses were due to the way that the case was defended by Mr. Romero? I don't have the knowledge of the lower court's findings saying that it was Mr. Romero's fault. What I do know is that the evidence in this record suggests. . . Did the counsel misrepresent that in the record? I don't know. What I'm saying is I don't know whether the lower court found that. But the evidence in this record was that there were good faith efforts made to settle by making a written demand. The reason that the amount is not in the record is because they objected to my including the amount as a settlement discussion. And so we redacted the amount from the record to allow that document to be introduced into evidence. With respect to the settlement offer, that can't be some sort of a bar to a later discharge in bankruptcy. I mean, I would suppose that we would want to encourage settlement of claims between debtors and creditors outside the bankruptcy context just because the law generally encourages settlement. And because it just as a collateral matter would relieve some of the caseload on the bankruptcy courts if debtors and creditors were able to settle their claims outside of the bankruptcy context. I mean, I know in mortgage lending, there are times when a debtor simply can't make the monthly payments or whatever, and the lender will exercise forbearance. The bankruptcy court is in no way ever involved. And to the degree that a settlement offer has been tendered, it certainly can't work against the petitioner in a later bankruptcy case and may well work in the petitioner's favor. That's exactly right. And what's important here is that Judge Cataliota in making his finding on this settlement effort, his specific words were it takes two to tango because the evidence was that Romero was making an effort to settle but was being rebuked because of the strategic importance of this case, meaning that Janvey had many, many cases, clawback cases similar to the Madoff-type cases. Ambassador Romero's case was one of the first. Well, the issue he lost on, the judgment was it was a fraudulent conveyance, wasn't it? It was a constructive fraudulent conveyance. Okay, a constructive fraudulent conveyance. And it was found that that's why he owed the money, correct? Right. No fraud on Ambassador Romero's part. It was simply the fact that the- I thought you said constructive fraud. I did. But it was constructive fraud on behalf of the pay or the Ponzi scheme that paid him those assets. And so what the court found was because it was a Ponzi scheme, there could be no value that was given to that entity because it was- How many victims were there in the Ponzi scheme? My understanding is thousands. Thousands of people were bilked out of a lot of money. Yes. And so he received some money, and it was considered to be a constructive fraud. As with all those thousands of investors who received payments of money, Ambassador Romero received money from that entity as well. And the very day he found out that there were allegations- What was his role other than investor? After his retirement from public service as an ambassador and assistant secretary of the state- You've said that title about 10 times now, but can you just get to answer the question? Sure. He was recruited by Stanford Financial to give them advice on the political climate and the governments in foreign jurisdictions where he had familiarity. And so he was an advisor to the company giving- And it seemed he was trying to get back money for the people who were- Aren't they still? My understanding is they are, yes. This is a court of equity, right? We keep talking about equity in bankruptcy, right? That's correct. What's the average amount of money that- Do you have any idea what an American makes annual income? I don't. About $55,000. How much money did he claim is exempt money that's not subject to paying this debt? He has tenants- $5 million? Yes. Tenants buy the entirety of his property with his spouse, which is exempt under Congress' code, as well as retirement accounts, including a defined benefit. $5 million. That's right. And then he paid off what, credit card debts? It says wife paid off credit card debts. That's correct. How much? I don't know the answer to that. Well, about $170,000 of debts? He has $170,000. Of what? He has legal fees of $170,000. He has additional legal fees to a different firm that didn't submit a proof of claim for whatever reason. There were also credit card debts. There were secured debts for vehicles. Those lawyers were paid off? No, they weren't. They weren't paid off? No. Did he pay some- In the proof of claims, did he pay any of that proof of claims were not submitted for? No, that's what the trustee- Correct. Yes, Your Honor. With respect to the single large debt that was raised- So if this case is not a case where you look at the single creditor type case, what kind of case is? What would it look like? Well, let me tell you why everybody's focus on the single large debt is not accurate. The actual factor that is used in the cases is the debtor's motivation in filing is to avoid a large single debt incurred through conduct akin to fraud, misconduct, or gross negligence. Courts have clearly stated in many cases that I've cited that a filing of a petition to avoid a large debt of a single creditor is not alone sufficient to warrant a dismissal under 707. There must be evidence of conduct akin to fraud, misconduct, or gross negligence. We cited those cases at pages 30 and 31 of our brief denying dismissal where the bankruptcy was filed to address a single debt. Debts are what cause bankruptcies, and there can be no requirement that debtors run up multiple debts just to be able to take advantage of the bankruptcy code. That would be a very bad policy. So why did the appellant abbreviate that factor here? The answer is because there's absolutely no evidence of any conduct akin to fraud, misconduct, or gross negligence by Ambassador Romero in this case. Just none. This is not a case where assets were transferred to family or relatives before the filing, or a case where assets were hidden from creditors or concealed from the trustee, or assets that were converted into exempt assets from non-exempt assets immediately prior to the bankruptcy. None of that has taken place here, which is when you dig into the cases appellants cited, those are the factors that the courts relied on in dismissing the cases where there was a single large debt. None of those cases dismissed the debt purely because there was a large debt. Yes, Your Honor? Can I ask you a question? I'm not familiar with some of these parts of the bankruptcy code. So if there's a concern that the exemptions in this case are too large, someone ought not be able to exempt quite this much property and money under the circumstances, is there a procedure for challenging the exemptions where you could make that argument? There is, Your Honor. And the procedure is there is a deadline that is established under the code for objecting to the exemptions. The record is clear that they asked us several times to extend that deadline for their objecting to exemptions. We consented to it every time. The deadline came, they didn't object, which is why Judge Cataliota said that he's presuming that the exemptions are valid because nobody, including the trustee, the appellant, or any other creditor, objected to the exemptions. Could you make that kind of an equitable argument, like, yeah, okay, I get it, you and your spouse both own the house, but come on, this is just too much money for you to exempt? No, the amounts of the exemptions are specifically set by statute. Either the Maryland Legislature or Congress sets the value. With respect to T by E, tenants buy the entirety of this property, or retirement accounts, Congress and the Maryland Legislature allow for a full 100 percent exemption for those two items. So they're really unassailable, really? They are, Your Honor, by statute. With respect to the misrepresentations that were addressed in the filing, in the schedules, those schedules incidentally were filed by the Honorable Lori Simpson, who is now a bankruptcy judge, and what we explained to them over and over was there was a $300 amount difference, and that's because there was a lease that was signed after the petition date, and they argued that that was a misrepresentation because Ambassador Romero was underestimating his income. But that's not the law. The law is that the schedules are filed as of the petition date. The only obligation that a debtor has is to update those schedules if it becomes known that those schedules were inaccurate as of the petition date. There's no ongoing obligation to modify them for every change that happens post-petition because a Chapter 7 is a snapshot in time as of the petition date. All of the non-exempt assets go to the trustee. Future income and exempt assets go to the debtor. That's the way the Chapter 7 process works. So there was absolutely no misrepresentation by Ambassador Romero in his filings. I see that my time is up. If there are any questions, I'm happy to address them. Otherwise, I submit and ask that you affirm the bankruptcy in district courts. Thank you, Counsel. Mr. Satma, you have some time reserved. Since the skepticism, let me hit it straight on. We brought you six cases from six other circuits where debtors were thrown out for cause because one of the significant factors in each one of those cases is they had other litigation going on, they didn't like the way it was going, and they ran to bankruptcy court. That is exactly what happened here. We brought you the Schwartz case. It's the most recent one from Judge Posner just two years ago. Same thing. It's not a question of money. It's a question of gaming the litigation system. We brought you six cases, and I have not heard one excuse why it's okay to game the litigation system. Hold on a minute. You say game the litigation system? Absolutely, Your Honor. All right, I understand. I heard what you said. The bankruptcy court went out of its way to say how candid the debtor had been, prompt with respect to filing life deadlines, candid with respect to disclosing assets and what his lifestyle was and the rest. So it's odd that someone who actually merits a pat on the shoulder for dealing forthrightly and transparently with the bankruptcy court should be said to be gaming the system. Yes, sir. So he gets credit because he didn't commit bankruptcy fraud? Of course he filed all his paperwork. He wanted that bankruptcy. More than not committing bankruptcy fraud, it was that he was quite forthcoming. He wanted it to stick because he was gaming it. And let me just tell you, you can distinguish all those other cases by saying, oh, they were in different circuits and this and that, but you cannot run away from the fact that six other circuit courts have said, if you've got other litigation going on and you're losing, it's not going your way, and you get to run to bankruptcy court? Excuse me. Yes, sir. I come back to the fact that you make these assertions, but it's an adversary system, and if he's gaming the system, you have more than the right, you have the obligation to convince the bankruptcy court of that fact, which you did not convince the trier of fact. You're right. Excuse me, that he was gaming the system, counsel. Yes, sir. And if you had, he's got the people there before it, the bankruptcy court, but he didn't find out. Because he focused, Your Honor, on the wrong thing. And let me go back, Judge Gregory, to your points, just to clear up some, and I don't criticize him, he didn't try the case. 18,000 victims in the Ponzi scheme, $5.5 billion in losses. Read the Fifth Circuit opinion, Jandby v. Romero. We prosecuted an actual fraudulent transfer claim. He raised a good-faith affirmative defense, and he lost. And if you read his brief, and I've heard some of it here, all we're doing is relitigating that. Oh, I'm the victim. Oh, I'm the ambassador. He lost. Bankruptcy court is not the place to relitigate. The settlement, look at the appendix, page 442 in the appendix. We weren't trying to hide the ball on settlement. His settlement offer was pennies on the dollar. And we've got 18,000 victims we're trying to get money for. And if millionaires, who we have won against in a jury, we have won against at the Fifth Circuit, millionaires come to us and say, You know what? I'll offer you a few pennies on the dollar, or I'll drag you into bankruptcy court. I would not be doing my job for the receiver to say, Okay, fine. Okay, fine. But we weren't the problem in keeping that out of the record. Look at 442. These exempt asset issues, and I can tell we're hung up on this, but I have to remind you, they are not unassailable. How do I know that? Read Janvey v. Brown and Janvey v. Alguire, where defendants that we sued on a fraudulent transfer claim said, You cannot touch my assets, my IRAs, because they're exempt, and we litigated. You keep underscoring the fact that he lost. All right, he lost in other forums. Yes, sir. But there are a lot of, quote, losers, unquote, that petitioned for bankruptcy discharge, people who have lost in other litigation, and that other litigation creates a judgment creditor and the rest. But the fact is that the whole concept of bankruptcy for a fresh start is meant for those who have suffered reversals elsewhere. That's just the fact of it. May I say two things, Bill? Yeah, no, but, you know, you had the obligation to convince a trier of fact that there was some sort of bad faith here. And at the end of the day, it's a factual issue, not in another case, but in this case, about whether this individual was invoking the bankruptcy process in bad faith. And you haven't gotten the trier of fact to make that finding. Because he used the wrong standard, Your Honor. No, he didn't. He used the DAL standard. It's a totality of the circumstances standard. You yourself have indicated that. Yes, sir. And, you know, we very seldom find an era of law where someone has availed themselves, where a trial court has availed itself, of a totality of circumstances test. And in this case, it was this DAL standard is a fairly standard one throughout bankruptcy courts when a motion to dismiss the petition is filed. So how can that be an era of law? Because you can say all you want that you're following this test, but if what you actually do, if you read the opinion, is you go off on some other tangent. No, no, he didn't. It was a multi-factor test. You're the one that wants to convert it into some sort of single-factor test, whereas the bankruptcy court used a multi-factor test. He looked at everything about this debtor's life circumstances and about his financial circumstances, and he found in a variety of ways that I see no reason to dispute that this man was in a hard, hard way. And, Your Honor, all I can say is I have pointed out to you, and we pointed out in our briefing, factual findings and legal conclusions where the bankruptcy court got it wrong. And he got it wrong, and that's why this needs to be reversed. The rule of law, and if I may finish on this to respond. You may. If the rule of law is the following, I have $10 million in an IRA that I claim is exempt. That's where all my money is. And I go off this weekend to Las Vegas, and I charge up my Amex card $500,000 on wine, women's song, and whatever I can do. And then I wake up after the hangover, and I think, you know, I don't want to pay this bill. I don't even remember half of the things I did. And I let Amex sue me because I don't want to pay. And I litigate through all the courts, and at the end of that, after I've run up their bill, and I've used some of my exempt assets, I just go to bankruptcy. And the bankruptcy judge says, you know what, that's fine. You actually have zero assets because we pretend your exempt assets aren't even there. It was not the one that the bankruptcy court charged with aggressive litigation. Exactly. And he re-litigated that, Your Honor, when the judge in Dallas, the Article III judge in Dallas said it was Mr. Romero who ran up the bill, Your Honor. And that is what is wrong. Counsel, that was not what the bankruptcy court said. He said it was your aggressive litigation tactics that was driving the man into a further, that was driving the man into a further hole. And he ran up all kinds of legal bills because of what the bankruptcy court said, your aggressive litigation tactics. You come in before us here and say it was Mr. Romero's aggressive litigation tactics. And that's, you know, that's just, you're flipping the reality of it, aren't you, in terms of the record in this case. The record in this case, and it's in the appendix, Judge David Godbee in Dallas found that the attorney's fees in this case were run up due to Mr. Romero's conduct. Now you have, you're right. But the bankruptcy court acted as an appellate court. And I apologize. But this is, to me, this is so clear. When the bankruptcy court is saying Judge Godbee got it wrong. I can hear you, Counsel. You don't need to speak up. I can hear you. Forgive me, Your Honor. When the bankruptcy court puts itself in the position of saying, I'm going to find something different than some other judge who was there and litigated it, he's putting himself in the role of an appellate court, and that's not part of the totality of circumstances. He's not putting himself in the role of an appellate court because that's not exactly what I feel like you're asking us to do. I read these briefs, very persuasive. Both sides have sort of equities on their side. And I feel like you are asking us to put ourselves in the position of the bankruptcy court, which at least had the advantage of being able to see people, witness the cross-examination, make determinations that we can't make on a cold record like this. And, Your Honor, if I may respond to that. Yes. On this very important issue where Judge Godbee said one thing about whose fault it was that Mr. Romero had to spend all this money, and the bankruptcy court said, no, it's the receiver's fault, that's not the credibility of anybody. That is the bankruptcy court saying, I don't care what another federal judge decided. I'm deciding it differently. That doesn't deal with anybody's credibility. And we submit the case to Your Honors, and thank you very much for hearing us. Thank you, counsel. We're going to ask the clerk to just make a brief recess of the court, and we'll come down and read counsel. This honorable court will take a brief recess.
judges: Roger L. Gregory, J. Harvie Wilkinson III, Pamela A. Harris